IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Frank Scott Dabney *and* Kathryn Harrelle Dabney, | Civil Action No. 2:17-3151-RMG |
| Plaintiffs-Appellants, | **ORDER AND OPINION** |
| v. | |
| Bank of America, N.A., | |
| Defendant-Appellee. | |

This matter is before the Court on Appellants' appeal from the order of the United States Bankruptcy Court for the District of South Carolina granting Appellee's motion for judgment on the pleadings. For the reasons set forth below, the Court vacates the order of the bankruptcy court and remands this matter for further proceedings.

**I.     Background**

On May 11, 2006, Plaintiffs executed delivered to Lendmark Financial Services, Inc. ("Lendmark"), an adjustable rate note in the original principal amount of $304,000 (the "Note"). The Note provides the following interest rate provisions,

> **2. INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.000%. The interest rate I will pay may change in accordance with Section 4 of this Note.
>
> . . .
>
> **4. INTEREST RATE AND MONTHLY PAYMENT CHANGES.**
>
> **(A) Change Rates.** The interest rate I will pay may change on the first day of June, 2009 and on that day every 6 months thereafter. Each date on which my interest rate could change is called a "Change Date."
>
> **(B) The Index.** Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for SIX-MONTH U.S. dollar denominated deposits in the London market (LIBOR)

as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.** Before each Change Date, the Note Holder will calculate my new interest rate by adding 5.125 percentage point(s) (5.125%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.** The interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 8.000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 1.000 percentage point(s) (1.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.000%.

Executed simultaneously with the Note was a mortgage of property located at 1844 Chelwood Circle, Charleston, South Carolina ("Mortgage") and an adjustable rate rider ("Rider"). The Rider expressly amends the Mortgage. (Dkt. No. 2-1 at 40.) It has the following interest rate provisions,

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES.

The Note provides for an initial interest rate of 8.00%. The Note provides for changes in the adjustable interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES.**

**(A) Change Rates.** The interest rate I will pay may change on the first day of June, 2009 and on that day every 6 months thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.** Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for SIX-MONTH U.S. dollar denominated deposits in the London market (LIBOR)

as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.** Before each Change Date, the Note Holder will calculate my new interest rate by adding 5.125 percentage point(s) (5.125%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.** The interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 8.000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 1.000 percentage point(s) (1.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.000%, or less than the initial interest rate stated above.

The Rider's interest rate provisions are identical to the Note except for the addition of "or less than the initial interest rate stated above" at the end of the last sentence of section 4(D). That difference is the crux of the case. The Rider provides for an interest rate floor of 8%, while the Note has an effective floor of 5.125%.

"Hybrid" adjustable rate mortgage loans, such as the loan at issue here, often have a low introductory rate followed by increases in rates. *See* Consumer Fin. Protection Bureau, Consumer handbook on adjustable-rate mortgages 20, 24–26 (2014). On May 2, 2006, the six-month LIBOR rate was approximately 5.25%. Fed. Reserve Bank of St. Louis, *6-Month London Interbank Offered Rate (LIBOR), based on U.S. Dollar*, http://fred.stlouisfed.org/series/USD6MTD156N. But for the introductory rate, the calculated interest rate would have been 10.375%. After the Note's three-year introductory period at 8%, however, the six-month LIBOR rate identified as the

first Current Index was approximately 1.5%—which would result in an interest rate of 6.625%—and it was continuing to drop. *Id.* It did not again exceed 1.5% until late September 2017. *Id.* Whether the Rider's 8% interest rate floor was effective thus had a substantial effect on payments due on the Note. If the floor was effective, Plaintiffs allegedly underpaid and defaulted on the loan. If it was ineffective, Plaintiffs allegedly overpaid the loan. After the three-year introductory period, Plaintiffs were charged interest at 8% per annum, giving effect to the Rider's interest rate floor.

Lendmark thereafter sold the Note, which Plaintiffs assert ultimately went into a Real Estate Mortgage Investment Conduit Trust with Bank of New York Mellon as trustee. According to Plaintiffs, Bank of America collects on the Note as master servicer under a pooling and servicing agreement with Bank of New York Mellon. Plaintiffs contend that even though the Loan was not in default, on September 7, 2012, Bank of America caused a foreclosure action to be filed against Plaintiffs, and that in the foreclosure complaint Bank of America wrongly alleged that Plaintiffs were in default under the terms of the loan documents.

On November 21, 2012, Plaintiffs filed a petition under Chapter 13 of the Bankruptcy Code. On March 30, 2017, Plaintiffs instituted the present adversary proceeding on March 30, 2017 against Bank of America, Specialized Loan Servicing, Shellpoint, and Bank of New York Mellon. The complaint alleges that Plaintiffs have been charged excessive interest on the Loan, have overpaid on the Loan, and that the named defendants collected payments in excess of sums actually due.

On July 11, 2017, the Bankruptcy Court dismissed Specialized Loan Servicing, Shellpoint, and Bank of New York Mellon from this action. On August 11, 2017, Bank of America moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. On

August 28, 2017, Plaintiffs moved to amend the complaint. The proposed amended complaint seeks to rename Specialized Loan Servicing, Shellpoint, and Bank of New York Mellon as defendants and to add several causes of action. The core factual allegations are unchanged. All claims arise out of Plaintiffs' contention that they are, and have been, charged an incorrect rate of interest.

The Bankruptcy Court granted Defendant Bank of America's motion for judgment on the pleadings and denied the motion to amend on November 8, 2017. This appeal followed.

## II. Legal Standard

### A. Bankruptcy Appeals

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; *see, e.g.*, *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010) (noting district court's "capacity as a bankruptcy appellate court"). The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2). Accordingly, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). A bankruptcy court's conclusions of law are subject to *de novo* review. *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999); *In re K & L Lakeland, Inc.*, 128 F.3d 203, 206 (4th Cir. 1997).

### B. Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further."

*Lewis v. Excel Mech., LLC*, 2:13-CV-281-PMD, 2013 WL 4585873 at * 1 (D.S.C. Aug. 28, 2013) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1368 (3d ed. 2010)). A judgment on the pleadings is only warranted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* at * 2 (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

Rule 12(c) motions limit the court's review to the pleadings, *Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964), and "any documents and exhibits attached to and incorporated into the pleadings," *Lewis*, 2013 WL 4585873 at * 1 (citing *Eagle Nation, Inc. v. Mkt. Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001)). Like motions filed under Rule 12(b)(6), motions pursuant to Rule 12(c) call for the pleadings to be construed in the light most favorable to the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Accordingly, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Lewis*, 2013 WL 4585873, at * 2 (quoting *John S. Clark Co., Inc. v. United Nat'l Ins. Co.*, 304 F. Supp. 2d 758, 763 (M.D.N.C. 2004)).

### III. Discussion

The issue before the Court is simply whether the interest rate floor in the Rider was effective. For the reasons set forth below, the Court, accepting Appellants' allegations as true and drawing all reasonable inferences in their favor, holds Appellee has not "clearly established that . . . [it] is entitled to judgment as a matter of law." *Lewis*, 2013 WL 4585873 at * 1.

Plaintiffs' opening brief argues that allowing the Rider to modify the Note would impermissibly destroy the negotiability of the Note. The Bankruptcy Court rejected that argument, finding that the negotiability of the Note is not an issue in this case. Likewise, it is not clear to this

Court how the negotiability of the Note affects its enforceability against the borrower—Plaintiffs seemingly would be obliged to repay the loan with agreed interest even if the Note were non-negotiable. But because Bank of America has not shown that Lendmark would be entitled to judgment as a matter of law regarding the interest rate floor (if it still held the Note), it is not necessary to reach any issues of negotiability. Moreover, Plaintiffs arguments that Bank of America lacks authority to enforce the Note because of deficiencies in the chain of title are not before this Court in the present appeal. Thus, for purposes of this appeal, this Court assumes Bank of America may enforce any rights under the Note originally enforceable by Lendmark.

The interest rate floor does not appear in the Note but does appear in the simultaneously executed Rider. "Where a mortgage is given to secure the payment of a note or bond, the two instruments being made at the same time, they are to be read and construed together." *Rhodus v. Goins*, 123 S.E. 645, 646 (S.C. 1924). "Construing contemporaneous instruments together means that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, [those provisions] will be given effect between the parties so that the whole agreement as actually made may be effectuated." *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 232 S.E.2d 20, 24 (S.C. 1977). Under the parol evidence rule, extrinsic evidence is inadmissible to vary or contradict the terms of a contract. *Penton v. J.F. Cleckley Co.*, 486 S.E.2d 742, 745 (S.C. 1997). "However, if a contract is ambiguous, parol evidence is admissible to ascertain the true meaning and intent of the parties." *Koontz v. Thomas*, 511 S.E.2d 407, 411 (S.C. Ct. App. 1999). An ambiguous contract is one capable of being understood in more than one way. *Klutts Resort Realty*, 232 S.E.2d at 25.

The loan documents, read together as a whole, are capable of being understood as having an interest rate floor and as not having an interest rate floor. The loan documents therefore are

ambiguous and parol evidence might resolve the ambiguity. For example, it is dubious whether the interest rate floor could be said to be the intent of the parties if it were not properly disclosed to Plaintiffs during the process of forming the agreements. It therefore is not apparent from the face of the loan documents that Bank of America is entitled to judgment as a matter of law.

The Court therefore vacates the Bankruptcy Court's order granting judgment as a matter of law for Defendant Bank of America and remands this matter for further proceedings. The Bankruptcy Court's order also denied Plaintiffs' motion to amend the complaint for two reasons. First, as to Bank of America, it denied the motion to amend as futile because it held Bank of America was entitled to judgment as a matter of law. This Court rules that holding was in error. However, this Court expresses no opinion on whether there may be other reasons to deny Plaintiffs' motion to amend as to Bank of America. Second, as to other, previously dismissed defendants, the Bankruptcy Court denied the motion based on Plaintiffs' failure to serve those former defendants with the motion to amend. That issue was not presented in this appeal.

## IV. Conclusion

For the foregoing reasons, the Court **VACATES** the order of the Bankruptcy Court and **REMANDS** this matter for further proceedings consistent with this Order.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

June 3, 2018
Charleston, South Carolina